FIRST DIVISION

June 1, 1998

No. 1-96-4072

JANE DOE and JOHN DOE, Indiv. and as Parents and Next Friends of Baby Girl Doe, a Minor,

Plaintiffs-Appellees,

v.

ILLINOIS MASONIC MEDICAL CENTER, YURY VERLINSKY, CHARLES M. STROM, MELODY ANN WHITE, and AARON S. LIFCHEZ,

Defendants-Appellants.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

Susan F. Zwick,

Judge Presiding.

JUSTICE GALLAGHER delivered the opinion of the court:

This case comes to us on interlocutory appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308), and we respond to the following certified question:

"Whether the Institutional Review Board ('IRB') of the Illinois Masonic Medical Center, a duly constituted committee of the medical staff, is protected from disclosing and producing to plaintiffs the documents submitted for an 
in
 
camera
 inspection to the Circuit Court of Cook County, including the entire file of the IRB and minutes from its meetings under: a) the peer review provisions, and b) the 'medical study' provisions of the Medical Studies Act. 735 ILCS 5/8-2101 (1996)."

We answer the question in the affirmative and reverse. 

Defendant, Illinois Masonic Medical Center, had a research program designed to reduce the incidence of cystic fibrosis.  The program involved a preimplantation genetic procedure whereby several ova would be removed from a female patient and tested for the cystic fibrosis gene.  Only the healthy ova not containing the gene were to be fertilized and the resulting disease-free embryos would be implanted in the female patient.

Plaintiffs, Jane Doe and John Doe, are the parents of Baby Girl Doe, a child born with cystic fibrosis, after Jane Doe went through the above procedure.  The Does have an older son with cystic fibrosis, which is why they originally sought the preimplantation genetic testing from defendants.  This was still an experimental procedure and if it had been successful, Baby Girl Doe would have been the first child in the world born without cystic fibrosis under this research program.

The Does filed suit against multiple defendants and requested production of all of the documents relative to the preimplantation genetic testing procedure, including protocols, submitted to the Institutional Review Board, as well as the protocol finally approved by the IRB.  Defendants objected, asserting that the requested documents were privileged under the Medical Studies Act. 735 ILCS 5/8-2101 (West 1996).  After conducting an 
in camera 
inspection of the requested documents, the trial court ordered the defendants to produce most of the documents.  The trial court subsequently granted defendants' motion for certification of the issue and this court granted their application for interlocutory appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308).  The Illinois Hospital and HealthSystems Association was allowed to file its 
amicus
 
curiae
 brief urging this court to reverse the trial court's order to disclose the documents.

This case involves the interpretation and application of the Medical Studies Act, which, at all times relevant, provided as follows:

"§ 8-2101.  Information obtained.  All information, interviews, reports, statements, memoranda, recommendations, letters of reference or other third party confidential assessments of a health care practitioner's professional competence, or other data of the Illinois Department of Public Health, local health departments, the Illinois Department of Mental Health and Developmental Disabilities, the Mental Health and Developmental Disabilities Medical Review Board, Illinois State Medical Society, allied medical societies, health maintenance organizations, medical organizations under contract with health maintenance organizations or with insurance or other health care delivery entities or facilities, tissue banks, organ procurement agencies, physician-owned inter-insurance exchanges and their agents, committees of ambulatory surgical treatment centers or post-surgical recovery centers or their medical staffs, or committees of licensed or accredited hospitals or their medical staffs, including Patient Care Audit Committees, Medical Care Evaluation Committees, Utilization Review Committees, Credential Committees and Executive Committees, or their designees (but not the medical records pertaining to the patient), used in the course of internal quality control or 
of medical study for the purpose of reducing morbidity or mortality
, or for improving patient care or increasing organ and tissue donation, shall be privileged, strictly confidential and shall be used only for medical research, increasing organ and tissue donation, the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges or agreements for services, except that in any health maintenance organization proceeding to decide upon a physician's services or any hospital or ambulatory surgical treatment center proceeding to decide upon a physician's staff privileges, or in any judicial review of either, the claim of confidentiality shall not be invoked to deny such physician access to or use of data upon which such a decision was based." (Emphasis added.) 735 ILCS 5/8-2101(West 1996).

It is well settled that the "cardinal rule of statutory construction, to which all other canons and rules are subordinate, is to ascertain and give effect to the true intent and meaning of the legislature." 
Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.
, 158 Ill. 2d 76, 81, 630 N.E.2d 820, 822 (1994).  The best indication of the legislature's intent is the statutory language itself. 
Solich
,

158 Ill. 2d at 81, 630 N.E.2d at 822.  Here, the language of the statute in issue is clear.

The supreme court, in 
Niven v. Siqueira
, 109 Ill. 2d 357, 487 N.E.2d 937 (1985), focusing on the language of the Act, decided that documents in the possession of the Joint Commission on Accreditation of Hospitals relating to accreditation of a hospital were privileged.  The court stated that "[t]he purpose of the Act is to encourage candid and voluntary studies and programs used to improve hospital conditions and patient care or to reduce the rates of death and disease." 
Niven
, 109 Ill. 2d at 366, 487 N.E.2d at 942.

Applying this standard, as articulated in 
Niven
, to the present case, it is clear the Act applies to the materials in question.  In addition to protecting all information used in the course of "internal quality control," the Act's plain language expressly protects all information used in the course of "medical study."  Statutes should be construed so that no term is rendered superfluous or meaningless. 
Niven v. Siqueira
, 109 Ill. 2d 357, 365, 487 N.E.2d 937, 942 (1985).  Therefore, we presume that the legislature clearly intended that the statute's purview was not restricted to peer review committees. 

The Act also limits the privilege to materials belonging to certain entities.  Included among these are "committees of licensed or accredited hospitals."  The IRB is such a hospital committee.  Although the IRB was characterized as a "committee of the 
medical 
staff" in the certified question, we consider it to be more properly characterized as a "committee of the hospital."  While it is comprised of medical staff, it also includes a member who is not part of the medical staff.  Furthermore, that federal law mandates the establishment of an IRB in this experimental type of medical study does not negate the IRB's status as a hospital committee.

    It is true that our supreme court has repeatedly stated that the purpose of this legislation is "to ensure the effectiveness of professional self-evaluation, by members of the medical profession, in the interest of improving the quality of health care." 
Jenkins v. Wu
, 102 Ill. 2d 468, 480, 468 N.E.2d 1162, 1168 (1984); 
accord 
Roach v. Springfield Clinic
, 157 Ill. 2d 29, 40, 623 N.E.2d 246, 251 (1993); 
Richter v. Diamond
 , 108 Ill. 2d 265, 269, 483 N.E.2d 1256, 1257-58 (1985)
.  However, the language regarding peer review was necessitated by the fact that those cases happened to involve materials actually generated by peer review committees or whether certain hospital medical staff qualified as a peer review committee.  Unlike in the case at bar and in the 
Niven 
case discussed earlier in this opinion, no other type of committee was involved.  Thus, these decisions offer little guidance with respect to the fact situation with which we are presented.

That committees other than peer review committees were included in the Act was acknowledged nevertheless by the 
Roach
 court when, citing 
Niven, 
the court explicitly stated that "the statute may be applicable to certain other types of committees."  
Roach
, 157 Ill. 2d at 40, 623 N.E.2d. at 251.  The IRB here qualifies as the type of committee covered by the Act.  Although we believe that peer review functions are probably an inherent and inextricable part of the IRB's review process, 
promoting peer review is not the 
only
 purpose of the Act.  Thus, the case of 
Konrady v. Oesterling, 
149 F.R.D. 592 (D. Minn. 1993), which was relied upon by the trial court, is not persuasive because the Illinois statute is broader than the Minnesota statute construed in 
Konrady
, which was expressly limited to peer review and contained no privilege for medical study information as expressly provided for by the Illinois Act.

Marsh v. Lake Forest Hospital
, 166 Ill. App. 3d 70, 519 N.E.2d 504, 508 (1988), recognized that Illinois courts have held that the purpose of the Act is to insure the effectiveness of professional self-evaluation in the interest of improving the quality of health care, and that the typical case involved whether the statute barred disclosure of documents compiled in the course of granting, restricting, or suspending a doctor's staff privileges.  To refer to the Act as a "peer review" statute, however, is not an entirely accurate description.  "[N
]o court has held that promoting peer review
 is the 
only
 purpose of the Act
. 
(Emphasis in original.)
 Marsh
, 166 Ill. App. 3d at 75, 519 N.E.2d at 508.

In fact, the distinction between the peer review aspect and the medical research aspect of the original, and arguably narrower, statute was acknowledged in 
Matviuw v. Johnson
, 70 Ill. App. 3d 481, 486, 388 N.E.2d 795, 799-800 (1979)(holding that the section of the Act which, at that time, provided immunity from suit for those providing confidential information in the course of a research project did not apply to a meeting of a hospital's medical executive committee convened to evaluate a physician's performance).

Plaintiff argues further that it is inconsistent to deny information to a subject of an experimental procedure when the information is collected for the purpose of protecting these subjects.  There is no inconsistency when the essential nature of a privilege is considered.  "Privileges which protect certain matters from disclosure are not designed to promote the truth-seeking process, but rather to protect some outside interest other than the ascertainment of truth at trial."  
D.C. v. S.A.
  178 Ill. 2d 551, 561-62, 687 N.E.2d 1032, 1038 (1997) citing 1 J. Strong, McCormick on Evidence §72, at 269 (4th ed. 1992).

The purpose of the Act is based upon this "outside interest," which is "to encourage candid and voluntary studies and programs used to improve hospital conditions and patient care or to reduce the rates of death and disease." 
Niven
, 109 Ill. 2d at 366, 487 N.E.2d at 942.  Thus, 
both
 physician peer review programs and voluntary experimental research studies would promote this goal.  The purpose of the Act is not to facilitate prosecution of malpractice cases. 
Jenkins v. Wu
, 102 Ill. 2d at 479-80, 468 N.E.2d at 1168.

While restrictions on discovery may make it difficult in some instances, if not impossible, for plaintiffs to prove otherwise meritorious cases, such restrictions nevertheless represent a considered judgment that interests of litigants must yield to other interests, in this case confidentiality, privacy and candid peer review within medical institutions.  See, 
e.g.
, 
Pritchard
 v. SwedishAmerican Hospital
, 191 Ill. App. 3d 388, 404, 547 N.E.2d 1279, 1284 (1989); 
Woodard v. Krans, 
234 Ill. App. 3d 690, 700, 600 N.E.2d 477, 484 (1992).  Additionally, since the Act provides patients with full and complete access to their own records, denial of the privileged documents should have little impact on any patient's ability to maintain a cause of action for medical malpractice, considering that such plaintiffs "can also depose all persons involved in their treatment and engage experts to give opinions as to the quality of care received." 
Jenkins v. Wu
, 102 Ill. 2d 468, 479, 468 N.E.2d 1162, 1168 (1984).

For the foregoing reasons, we conclude that the trial court incorrectly ordered production of the requested documents and that the information of the hospital's IRB was privileged under the Medical Studies Act. 735 ILCS 5/8-2101 (West 1996).

Certified question answered; reversed and remanded.

CAMPBELL, P.J. and O'MARA FROSSARD, J. concur.