[No. B188909. Second Dist., Div. Five. May 1, 2006.]

COUNTY OF LOS ANGELES et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
PATRICIA REYES GAVIRA et al., Real Parties in Interest.

## COUNSEL

Manning & Marder, Kass, Ellrod, Ramirez, Mildred K. O'Linn, Timothy J. Kral and Kevin H. Louth for Petitioners.

No appearance for Respondent.

Sonia Mercado & Associates, Sonia M. Mercado; Law Offices of R. Samuel Paz and R. Samuel Paz for Real Parties in Interest.

## OPINION

**KRIEGLER, J.**—Records of organized medical peer review committees are exempt from discovery in a civil action pursuant to Evidence Code section 1157.[1] Section 1157.6 extends the same protection to the quality assurance committees of county-operated mental health facilities. Petitioners, the County of Los Angeles (County), the Los Angeles County Sheriff's Department (LASD), and Los Angeles County Sheriff Lee Baca, challenge an order of respondent court directing them to produce certain documents generated by the chair of the Quality Assurance Committee for the Jail Mental Health Services Division of the Los Angeles County Department of Mental Health. We hold that the documents are exempt from disclosure under sections 1157 and 1157.6. Accordingly, we grant the petition.

### FACTS AND PROCEDURAL HISTORY

In July 2002, Ramon Gavira Camarillo was found hanging in his cell at the Los Angeles County jail, where he was incarcerated after having been

[1] All further statutory references are to the Evidence Code, unless otherwise indicated.

arrested for driving under the influence. Plaintiffs, who are Mr. Gavira's widow and children, contend that during the 72 hours he was in the custody of the Los Angeles County Sheriff, Mr. Gavira was beaten repeatedly by sheriff's deputies. Plaintiffs also contend that although Mr. Gavira was "depressed, anxious, fearful and nervous," and suffered from auditory hallucinations and alcohol withdrawal syndrome, he was not given medications that a county doctor prescribed and instead was moved to a "discipline isolation module" where the medication was not available. Plaintiffs' second amended complaint, against the County, LASD, Sheriff Baca, and several LASD supervisory personnel and deputy sheriffs, sets forth eight causes of action: (1) violation of civil rights (42 U.S.C. § 1983) causing wrongful death; (2) failure to train and supervise, causing constitutional violations; (3) policy, custom or practice causing constitutional violations;[2] (4) conspiracy to intentionally destroy evidence that delays, hinders, and obstructs plaintiffs' constitutional rights to justice; (5) violation of the Americans With Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.; ADA); (6) violation of Civil Code section 51.7 et seq. (freedom from violence and intimidation); (7) general negligence; and (8) medical negligence. Pertinent to this proceeding, plaintiffs allege in their second cause of action that the County, LASD, and its supervisory personnel failed in their duty to, among other things, "provide mental/medical intervention and attention to injured, ill, or potentially suicidal arrestee[s] or inmates" and to periodically "monitor an inmate's serious mental/medical condition and suicidal prevention which may result in serious injury or loss of life"; "monitor the quality of mental/medical care, attention and treatment provided to ill inmates and arrestees"; and "monitor the adequacy of mental/medical custodial staffing to ensure adequacy of medical care, treatment, and attention rendered to ill inmates and arrestee[s]."

In May 2004, plaintiffs served on LASD and Sheriff Baca demands for production and inspection of documents, including documents generated by the Mental Health Services Division of the Los Angeles County Department of Mental Health and Dr. Stephen Shea, a psychiatrist who chairs the division's Quality Assurance Committee (the Committee). The County interposed various objections. Plaintiffs filed motions to compel production, which the County opposed. The parties resolved some issues through a "meet and confer" process. On November 17, 2005, at respondent court's direction, the parties produced joint statements outlining the remaining items in dispute.

On December 9, 2005, respondent court issued its ruling granting plaintiffs' motion to compel production of the following documents:

---

[2] *Monell v. New York City Dept. of Social Services* (1978) 436 U.S. 658 [56 L.Ed.2d 611, 98 S.Ct. 2018].

"**REQUEST FOR PRODUCTION NO. 16** [to LASD]: All writings reflecting any and all monthly reports prepared by Dr. Shea regarding his review of complaints for the period of January 1, 1997 to the date of production. (*This request is clarified to be limited to medical/mental health care*. Plaintiff[s] agreed to narrow the request to the period of January 2000 to January 2005.)" In granting the request, respondent court stated: "This goes toward the issue of notice."[3]

"**REQUEST FOR PRODUCTION NO. 7** [to Sheriff Baca]: All periodic analysis or statistical evaluations and/or analysis by Dr. Shea and/or his quality assurance nurse, regarding mental health care and treatment, for the time period of January 1, 1999 to the date of production." In granting the request for production, respondent court stated: "This is narrowly tailored and goes to notice."

## STANDARD OF REVIEW

Petitioners had the burden in the trial court of establishing that the discovery requested was protected by the privileges defined in sections 1157 and 1157.6. (*Willits v. Superior Court* (1993) 20 Cal.App.4th 90, 104–105 [24 Cal.Rptr.2d 348]; *Santa Rosa Memorial Hospital v. Superior Court* (1985) 174 Cal.App.3d 711, 727 [220 Cal.Rptr. 236].) A trial court's ruling on a motion to compel discovery of privileged matters is evaluated under the abuse of discretion standard of review. (*2,022 Ranch v. Superior Court* (2003) 113 Cal.App.4th 1377, 1387 [7 Cal.Rptr.3d 197].) In addition, if the trial court reached its decision after resolving conflicts in the evidence, or inferences that could be drawn from the evidence, we review those factual findings to determine whether they are supported by substantial evidence. (*Ibid.*) There was no such factual dispute here, however. Respondent court had to determine whether the documents at issue, which were indisputably authored by Dr. Shea, were exempt from discovery as a matter of law under the criteria set forth in sections 1157 and 1157.6.

## DISCUSSION

The County established that the documents at issue here met the criteria of sections 1157 and 1157.6. There is no exception in sections 1157 and 1157.6 for discovery requests merely because the request is "narrowly drawn" or relevant to the "issue of notice." Thus, respondent court was required to deny the motion to compel. (*D. I. Chadbourne, Inc. v. Superior Court* (1964) 60 Cal.2d 723, 729 [36 Cal.Rptr. 468, 388 P.2d 700].)

---

[3] Plaintiffs asserted that the documents encompassed in this request, which included data on prior incidents, were relevant to defendants' claim that they did not have notice of "ongoing problems of constitutional violations" in the Jail Mental Health Services Division.

The Legislature enacted section 1157[4] in 1968 in response to *Kenney v. Superior Court* (1967) 255 Cal.App.2d 106 [63 Cal.Rptr. 84], which held that the plaintiff in a medical malpractice action could discover hospital staff records. A number of years later, the same court that decided *Kenney* opined that what prompted the Legislature to enact section 1157 was its belief that "external access to peer investigations conducted by staff committees stifles candor and inhibits objectivity. [Section 1157] evinces a legislative judgment that the quality of in-hospital medical practice will be elevated by armoring staff inquiries with a measure of confidentiality. [¶] This confidentiality exacts a social cost because it impairs malpractice plaintiffs' access to evidence. In a damage suit for in-hospital malpractice against doctor or hospital or both, unavailability of recorded evidence of incompetence might seriously jeopardize or even prevent the plaintiffs' recovery. Section 1157 represents a legislative choice between competing public concerns. It embraces the goal of medical staff candor at the cost of impairing plaintiffs' access to evidence." (*Matchett v. Superior Court* (1974) 40 Cal.App.3d 623, 629 [115 Cal.Rptr. 317], fns. omitted.)

In 1982, the Legislature enacted section 1157.6[5] which extended the same discovery exemption provided by section 1157 to quality assurance committees "having the responsibility of evaluation and improvement of the quality of mental health care rendered in county operated and contracted mental health facilities . . . ." The Legislature found that the " 'implementation of quality assurance has been impeded in part because of concerns by county mental health professionals over the current status of their immunity while

---

[4] Section 1157 provides in pertinent part: "(a) Neither the proceedings nor the records of organized committees of medical, medical-dental, podiatric, registered dietitian, psychological, marriage and family therapist, licensed clinical social worker, or veterinary staffs in hospitals, or of a peer review body, as defined in Section 805 of the Business and Professions Code, having the responsibility of evaluation and improvement of the quality of care rendered in the hospital, or for that peer review body, or medical or dental review or dental hygienist review or chiropractic review or podiatric review or registered dietitian review or veterinary review or acupuncturist review committees of local medical, dental, dental hygienist, podiatric, dietetic, veterinary, acupuncture, or chiropractic societies, marriage and family therapist, licensed clinical social worker, or psychological review committees of state or local marriage and family therapist, state or local licensed clinical social worker, or state or local psychological associations or societies having the responsibility of evaluation and improvement of the quality of care, shall be subject to discovery."

[5] Section 1157.6 provides: "Neither the proceedings nor the records of a committee established in compliance with Sections 4070 and 5624 of the Welfare and Institutions Code having the responsibility of evaluation and improvement of the quality of mental health care rendered in county operated and contracted mental health facilities shall be subject to discovery. Except as provided in this section, no person in attendance at a meeting of any such committee shall be required to testify as to what transpired thereat. The prohibition relating to discovery or testimony shall not apply to the statements made by any person in attendance at such a meeting who is a party to an action or proceeding the subject matter of which was reviewed at such meeting, or to any person requesting facility staff privileges."

serving on official quality assurance committees. [¶] It is, therefore, the intent of the Legislature in enacting this act to provide mental health professionals employed by counties and county-contracted facilities with the same immunities presently possessed by medical societies and hospital medical staffs while serving on quality assurance committees.' " (Historical and Statutory Notes, 6 West's Ann. Civ. Code (2006 supp.) foll. § 43.7, p. 24.)

*The County's Jail Mental Health Services Division, Which Includes the Inmate Treatment Facility at the Los Angeles County Jail, Is a Health Care Facility Covered by Sections 1157 and 1157.6*

 Section 1157 exempts from disclosure documents generated by a "peer review body, as defined in Section 805 of the Business and Professions Code." That section defines "peer review body" in several ways, two of which are relevant here.

Business and Professions Code section 805, subdivision (a)(1)(A) defines "peer review body" as a "medical or professional staff of any health care facility or clinic licensed under Division 2 (commencing with Section 1200) of the Health and Safety Code . . . ." Health and Safety Code section 1250, subdivision (j)(1) in turn provides that a "correctional treatment center," is "a health facility operated by . . . a county, city, or city and county law enforcement agency that, as determined by the state department, provides inpatient health services to that portion of the inmate population who do not require a general acute care level of basic services. . . ."

Business and Professions Code section 805 also includes within the definition of "peer review body" a "committee organized by any entity consisting of or employing more than 25 licentiates of the same class that functions for the purpose of reviewing the quality of professional care provided by members or employees of that entity." (Bus. & Prof. Code, § 805, subd. (a)(1)(D).)

The County submitted evidence below that establishes the documents in issue here fall within sections 1157 and 1157.6. In a declaration supporting the County's opposition to plaintiffs' motions to compel, Dr. Shea stated as follows: The Jail Mental Health Services Division is "responsible for overseeing and/or providing mental health services to the inmates at the Los Angeles County Jail." The division "employs 25 licensed physicians (psychiatrists) and over 25 licensed clinical psychologists who provide professional care to inmates at the Los Angeles County Jail."[6] He personally reviewed the

---

[6] At oral argument, plaintiffs' counsel for the first time asserted that the Committee does not qualify as a "peer review body" because the Jail Mental Health Services Division does not have 25 licentiates at the particular facility where Mr. Gavira was treated. But there is no

documents contained in the County's privilege logs[7] that apply to the Committee for the Jail Mental Health Services Division, and authored many of the documents.

As part of a continuous quality improvement program for mental health services, the County "organized a committee that functions for the purpose of reviewing the quality of professional care provided by employees of the County." Dr. Shea's duties include managing the Committee and the documents produced by the Committee. Each of the documents identified on the County's privilege log that pertain to the Committee "contain information about the evaluation and improvement of the quality of mental health care rendered in the Los Angeles County Jail, which included County operated mental health facilities." The documents also "contain information on how the County intends to improve the quality of mental health care provided to [both male and female] inmates assigned to [various inpatient and outpatient programs] and the Inmate Reception Center," and "information about audits of individual patient's charts including personal identifying information for those patients."

Another declaration was filed by Helen Hud, R.N., who coordinated and maintained the records of the Committee. Nurse Hud declared, "The Committee routinely holds confidential meetings to evaluate and improve the quality of medical care provided to inmates at the Los Angeles County Jail. Committee members discuss processes and procedures for problem identification and also make corrective action determinations regarding specific problems that apply generally to all medical staff at the Medical Services Bureau. Certain members of the Committee then meet in confidence to discuss physician performance in the form of peer review. [¶] Once a specific problem has been identified and a course of corrective action is determined, the Committee monitors to make sure the improvement is accomplished and the problem is resolved. The Committee, in addition to identifying specific problems and methods for preventing problems, also tracks and discusses medical standards, methods and improvements at other medical facilities in the community in order to implement them at the Los Angeles County Jail as part of a continuous quality improvement process."

 The declarations of Dr. Shea and Nurse Hud established that the Committee meets all the criteria for a "peer review body" within the meaning of section 1157. Accordingly, the Committee's records, including the reports prepared for the Committee by Dr. Shea, are exempt from disclosure. The

---

evidence of this in the record, and plaintiffs do not have any support for their claim that the "25 licentiates" be located at one specific facility.

[7] The privilege logs were prepared in response to plaintiffs' motions to compel and include the documents at issue here.

Committee is comprised of the medical or professional staff of a health care facility. (Bus. & Prof. Code, § 805, subd. (a)(1)(A).) "Health care facility" includes a "correctional treatment center," which in turn includes a "health facility operated by . . . a county . . . law enforcement agency that provides inpatient health care services to . . . the inmate population." (Health & Saf. Code, § 1250, subd. (j)(1).) Furthermore, the division employs "more than 25 licentiates of the same class," whose purpose as a Committee is "reviewing the quality of professional care provided by members or employees" of the Jail Mental Health Services Division. (Bus. & Prof. Code, § 805, subd. (a)(1)(D).)

*The Peer Review Committee Exemption Applies to Reports Prepared by Dr. Shea*

Respondent court ordered disclosure of Dr. Shea's monthly reports concerning complaints received each month, as well as statistical reports and evaluations summarizing that data. Plaintiffs contend these reports are not protected by the peer review exemption because they were prepared by an individual, and "an individual is not a committee." Plaintiffs do not cite any California authority to support their assertion that a "peer review committee" report must be authored by the entire committee. The Illinois case on which plaintiffs rely, *Roach v. Springfield Clinic* (1993) 157 Ill.2d 29 [623 N.E.2d 246, 191 Ill.Dec. 1], is factually distinguishable because it involved evidence of a conversation between a doctor and a nurse which the court found had "nothing to do with any physician peer-review committee." (*Id.* at p. 40.) Here, the evidence shows the documents were prepared by Dr. Shea in connection with his responsibilities for the Committee.

*Penal Code Section 6030 Is Inapplicable*

Plaintiffs contend section 1157 applies only to hospital medical negligence cases and not to correctional medical facilities at all, because those facilities are regulated by Penal Code section 6030, and the quality of care at such facilities is subject to investigation by the United States Department of Justice pursuant to a memorandum of agreement. Plaintiffs contend that nothing in Penal Code section 6030 or its companion regulations "propose that jail medical quality assurance or peer review records are to be protected from discovery or that they should fall within the purview of [section] 1157."

As we noted *ante,* section 1157 applies to "correctional treatment facilities," which includes the Jail Mental Health Services Division. Penal Code section 6030 is a general statute that directs the Correctional Standards Authority to establish minimum standards for state and local correctional facilities. These standards include, but are not limited to, "health and sanitary

conditions, fire and life safety, security, rehabilitation programs, recreation, treatment of persons confined in state and local correctional facilities, and personnel training." (Pen. Code, § 6030, subd. (b).) The fact that the quality of medical care in the Los Angeles County jail has drawn the scrutiny of federal authorities is irrelevant to the issue here, which is whether this court should apply state evidentiary rules in this state civil action.

*Plaintiffs' Federal Claims Do Not Render Sections 1157 and 1157.6 Inapplicable*

Plaintiffs have asserted claims under the federal civil rights statute. (42 U.S.C. § 1983.) They contend Dr. Shea's reports are discoverable because state law "restrictions on discovery" do not apply where the plaintiff has asserted a federal civil rights claim. Plaintiffs cite numerous federal civil rights cases in which the federal courts have declined to apply state evidentiary rules.

Plaintiffs did not file their case in federal court, however. Although federal law controls the substantive aspects of plaintiffs' federal civil rights claim, state rules of evidence and procedure apply unless application of those rules would affect plaintiffs' substantive federal rights. (*Felder v. Casey* (1988) 487 U.S. 131, 138 [101 L.Ed.2d 123, 108 S.Ct. 2302]; see also *Wilson v. Garcia* (1985) 471 U.S. 261, 280 [85 L.Ed.2d 254, 105 S.Ct. 1938] [state statute of limitations for personal injury actions applies to 42 U.S.C. § 1983 claims]; *City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 12–13 [124 Cal.Rptr.2d 202, 52 P.3d 129] [§ 1045, subd. (b)(1), temporal limitation on disclosure of citizen complaints against police officers does not violate supremacy clause even though application of the limitation might deprive plaintiff of relevant evidence]; *Denari v. Superior Court* (1989) 215 Cal.App.3d 1488, 1495 [264 Cal.Rptr. 261] [right of privacy contained in Cal. Const., art. I, § 1, as well as Pen. Code section prohibiting release of criminal records, applied to bar discovery of names, addresses and telephone numbers of plaintiffs' fellow arrestees]; *Shotwell v. Donahoe* (2004) 207 Ariz. 287, 290 [85 P.3d 1045] [application of state evidentiary rule in employment discrimination case did not affect plaintiff's substantive federal rights].)

In *Felder,* the plaintiff filed a state court action against the City of Milwaukee, Wisconsin, its police chief and several police officers for civil rights violations that occurred in connection with the plaintiff's arrest. The defendants moved to dismiss the action because the plaintiff had not complied with Wisconsin's notice-of-claim statute, a prerequisite to filing suit against a governmental entity or officer in state court. The Supreme Court acknowledged that "States may establish the rules of procedure governing litigation in their own courts. By the same token, however, where state courts entertain a

federally created right of action, the 'federal right cannot be defeated by the forms of local practice.' " (*Felder v. Casey, supra,* 487 U.S. at p. 138, citing *Brown v. Western R. Co. of Alabama* (1949) 338 U.S. 294, 296 [94 L.Ed. 100, 70 S.Ct. 105].) The Supreme Court held that Wisconsin's notice-of-claim statute was not merely a rule of procedure because the purpose of the state statute—to minimize governmental liability—was "manifestly inconsistent with the purposes of the federal statute." (*Felder v. Casey, supra,* 487 U.S. at p. 141.) "We think it plain that Congress never intended that those injured by governmental wrongdoers could be required, as a condition of recovery, to submit their claims to the government responsible for their injuries." (*Id.* at p. 142.)

In *Felder,* the plaintiff's right of recovery under title 42 United States Code section 1983 was conditioned upon whether the he complied with Wisconsin's notice-of-claim statute. Because failure to comply with the statute would have barred the plaintiff's civil rights claim altogether, the Supreme Court held that application of the state statute was inconsistent with the aims of Congress when it enacted the federal Civil Rights Act. That is not the situation here. As respondent court noted in its order below, defendants have produced thousands of pages of documents in this case. Plaintiffs have failed to make any showing that denying them discovery of the few documents at issue would, in their words, "immunize the County Sheriff's Department and the Sheriff's conduct from liability."

*"Patient Information" Is Not Discoverable*

■ Plaintiffs contend that even if section 1157 applies to exempt the documents at issue, information concerning a patient which is disclosed to a quality assurance committee is subject to discovery under section 1156.1[8] as long as the identity of the patient is not disclosed. However, that section does not, as plaintiffs suggest, apply to any patient information that is before the Committee, but merely provides that patient information (minus the patients' names) that is part of a quality assurance committee's "research" or "medical

---

[8] Section 1156.1 provides: "(a) A committee established in compliance with Sections 4070 and 5624 of the Welfare and Institutions Code may engage in research and medical or psychiatric study for the purpose of reducing morbidity or mortality, and may make findings and recommendations to the county and state relating to such purpose. Except as provided in subdivision (b), the written records of interviews, reports, statements, or memoranda of such committees relating to such medical or psychiatric studies are subject to Title 4 (commencing with Section 2016.010) of Part 4 of the Code of Civil Procedure but, subject to subdivisions (c) and (d), shall not be admitted as evidence in any action or before any administrative body, agency, or person.

"(b) The disclosure, with or without the consent of the patient, of information concerning him or her to such committee does not make unprivileged any information that would otherwise be privileged under Section 994 or 1014. However, notwithstanding Sections 994

or psychiatric" studies may be subject to discovery in a civil action but "shall not be admitted as evidence in any action or before any administrative body, agency, or person." Nothing in the record here suggests that the documents at issue here resulted from a formal study or research conducted by the Committee. Rather, they are simply a summary of statistical data assembled on a monthly basis by Dr. Shea.[9]

## DISPOSITION

The petition for writ of mandate is granted. A peremptory writ shall issue directing respondent court to vacate its order of December 9, 2005, granting plaintiffs' motion to compel production of documents with respect to reports and analysis of Dr. Shea, and enter a new and different order denying the motion. Costs are not awarded in this proceeding.

Turner, P. J., and Mosk, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied July 12, 2006, S144068.

---

and 1014, such information is subject to discovery under subdivision (a) except that the identity of any patient may not be discovered under subdivision (a) unless the patient consents to such disclosure.

"(c) This section does not affect the admissibility in evidence of the original medical or psychiatric records of any patient.

"(d) This section does not exclude evidence which is relevant evidence in a criminal action."

[9] Respondent court also noted in its order below that defendants had previously provided plaintiffs with statistics of complaints that identified the type of complaint, area, gender, and disposition, but did not specifically identify the patient.