Filed 5/20/26  Marriage of Walther CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re Marriage of KIRA and HOWARD WALTHER. | 2d Civil No. B340131 (Super. Ct. No. 1440419) (Santa Barbara County) |
| KIRA NEILSON,<br><br>    Respondent,<br><br>v.<br><br>HOWARD WALTHER,<br><br>    Appellant. | |

On April 29, 2017, a judgment was entered dissolving the marriage of appellant Howard Walther (husband) and respondent Kira Walther, now Kira Neilson (wife).[1]  Appearing in propria persona, husband appeals the trial court's order entered on

_____

[1] Wife states that she has "remarried and her last name is now Neilson."

August 19, 2024, after a 15-day evidentiary hearing. The order denied husband's 23 requests for various orders and ruled on his 28 requests for judicial notice.

Husband purports to appeal "an Order for sanctions filed on 9/06/24," 18 days after he had filed the notice of appeal from the court's order entered on August 19, 2024.[2] The sanctions totaled $72,476.87. Husband did not file a notice of appeal from the sanctions order. Because husband's opening brief presents no argument as to the sanctions issue, we deem the purported appeal of the sanctions order to be abandoned. (See *Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1119-1120.)

Husband notes: "This dissolution . . . case . . . has been pending in the Superior Court of Santa Barbara for eleven years before ten judges, many of whom have been disqualified. . . . During proceedings, [husband] filed two malpractice lawsuits against his former seven attorneys." He claims to have paid more than $4.5 million "in attorneys' fees, sanctions, and costs."

This is husband's fourth appeal concerning his marriage to wife. (See *In re Marriage of Walther* (Feb. 22, 2022, B309062) [nonpub. opn.]; *In re Marriage of Walther* (Aug. 17, 2016, B267209) [nonpub. opn.]; *In re Marriage of Walther* (Nov. 30, 2015, B260104) [nonpub. opn.].)

The record on appeal is voluminous. It consists of an 8,750-page clerk's transcript, an 18-page augmented clerk's

---

[2] In his opening brief husband asserts: "On 6/20/24, the trial Court filed its Statement of Decision . . . followed by a final Order on 8/19/2024, with an Order for Sanctions filed on 9/06/24. This Order is appealable . . . ."

2

transcript, a 2,180-page reporter's transcript, and a 125-page augmented reporter's transcript.[3]

Husband's main claim is that the trial court erred in refusing to set aside the judgment of dissolution, which required him to pay monthly child support of $3,200 for two children. Husband also contends: (1) the court erroneously failed to order wife to appear for her deposition and to produce documents, and (2) the court committed errors at the evidentiary hearing.

Wife has moved to dismiss the appeal because it was filed after husband had been declared a vexatious litigant. We deny the motion. Wife has also filed a motion to impose sanctions against husband for taking a frivolous appeal.

We dismiss the purported appeal and affirm the order entered on August 19, 2024, after the evidentiary hearing. We grant wife's motion for sanctions in the amount of $12,590.20. We order husband to pay sanctions of $8,500 to the clerk of this court.

*Procedural Background*

In January 2020 the Santa Barbara County Department of Child Support Services (DCSS) filed in the marital dissolution action (1440419) an order to show cause why husband should not be held in contempt for failing to pay child support of $3,200 per month from April 1 through December 1, 2019. In August 2021 the trial court ordered that, pursuant to the parties' stipulation, starting "May 1, 2021, neither party shall be obligated to pay child support."

On February 6, 2023, husband filed a request for order "To Vacate the Void Marital [Dissolution] Judgement filed on

---

[3] We grant wife's motion to augment the record to include the judgment of dissolution.

3

4/29/17." The request was based on wife's concealment of her wages, overseas assets, and income from those assets. The concealment allegedly constituted "[e]xtrinsic fraud" that rendered the judgment of dissolution "VOID as a matter of law." Husband also requested that the court "change . . . [the] order for child support filed on . . . 4/29/17." On March 8, 2023, husband filed another request for order vacating the judgment.

At a hearing in April 2023, the trial court ruled "that there is no basis . . . to vacate the Judgment [of Dissolution] on any of the bas[e]s that are urged" by husband in the request for order filed on March 8, 2023. Husband told the court that he actually wanted to "amend" the judgment, not to vacate it. It provided that husband will sell real property in Arizona and that $105,000 from the proceeds will be paid to the Santa Barbara Superior Court bank account. "The Court will hear and rule on the motions filed by [the parties] and will determine the child support owed, if any, and whether the funds should be disbursed to [wife] or whether they should be returned to [husband]."

On August 15, 2023, the trial court began an evidentiary hearing concerning various motions and requests for orders. On October 4, 2023, before the conclusion of the evidentiary hearing, DCSS requested that the order to show cause re contempt be dismissed. DCSS explained, "[Husband] complied with the terms of stipulation and order filed 6/28/2023 and $105,000 is now being held by the court resulting from the sale of one of [husband's] properties." The court dismissed the order to show cause.

On February 15, 2024, husband delivered his closing argument in the evidentiary hearing. He argued that, during the marriage, wife had breached her fiduciary duty by concealing assets from him.

4

After wife had delivered her closing argument, the trial court stated: "[W]hen a divorce is concluded, . . . it is a reasonable thing for a litigant to object if they have evidence that there are assets that were not disclosed [by the other party] . . . [¶] . . . [I]t seems to me that [husband] was concerned that those concealed assets might be of great significance, that had they been known, that they would have provided a basis for recalculation of child support . . . ."

The court continued: "[T]he careful examination we have made of all of the bank records and property records makes clear that there is no asset of any kind or nature which wasn't disclosed in the dissolution proceeding, or which existed and was not disclosed [at] the time . . . the settlement was drawn up." The court said it "found the testimony of [wife] to be entirely credible, and largely unrefuted." Thus, "the easy conclusion for the court to draw is that there are no concealed assets, and that claims for breach of fiduciary duty [by wife] have not been established . . . ."

After the conclusion of the evidentiary hearing, the trial court issued an 18-page statement of decision. On August 19, 2024, the court filed its order based on the statement of decision. On the same date, husband filed his notice of appeal.

The notice of appeal states that husband is appealing from "[t]he judgment or order entered on 6/20/2024." The statement of decision was filed on that date. "[T]he general rule is that a statement of decision is not an appealable order." (*In re Marriage of Goldman* (2025) 107 Cal.App.5th 1258, 1264, fn. 6.) We construe the appeal to have been taken from the order filed on August 19, 2024, which incorporates the statement of decision.

5

*Motion to Dismiss Appeal*

On February 23, 2024, the trial court found husband to be a vexatious litigant. It entered a prefiling order pursuant to the vexatious litigant statutory scheme. (Code Civ. Proc. §§ 391–391.8.)

The order states that, "unless represented by an attorney, [husband is] prohibited from filing any new litigation in the courts of California without approval of the presiding justice . . . of the court in which the action is to be filed." "The term ' "[l]itigation" ' is defined broadly as 'any civil action or proceeding, commenced, maintained or pending in any state or federal court.' [Citation.] A litigation includes an appeal . . . filed in an appellate court." (*Garcia v. Lacey* (2014) 231 Cal.App.4th 402, 406.) "[E]ach appeal . . . is 'new' to this court when it is filed, thus qualifying as 'new litigation' within the meaning of [Code of Civil Procedure] section 391.7, subdivision (a) . . . ." (*McColm v. Westwood Park Ass'n* (1998) 62 Cal.App.4th 1211, 1220-1221 disapproved on another ground in *John v. Superior Court* (2016) 63 Cal.4th 91, 99, fn. 2 (*John*).)

Husband's appeal was filed on August 19, 2024, six months after the prefiling order. Wife has moved to dismiss the appeal because it is new litigation filed without the presiding justice's approval. Husband claims the motion should be denied because his Request for Order (RFO) dated March 8, 2023, as well as all of his other "RFOs, Motions, [and] Requests for Judicial Notices . . . arose from his Affirmative Defense against the 'Criminal Contempt' action initiated by DCSS for an alleged nonpayment of $156,800.00 in back Child Support."

On February 16, 2023, husband filed a document entitled, "[Husband's] Affirmative Defenses for Criminal Contempt for

6

Non-payment of Child Support." (Capitalization and bold omitted.) Husband contended the marital dissolution judgment, including the child support order, were void because of extrinsic fraud. The extrinsic fraud was wife's concealment of her assets. Husband argued, "The law is well settled to the effect that refusal to obey a void order of the Court is not a contempt and cannot be punished as such." Husband noted that, based on wife's fraudulent concealment of assets, in February 2023 he had "filed a Request [for] Order to Vacate the Void Marital Settlement Agreement."

"[P]refiling requirements apply to unrepresented vexatious litigant *plaintiffs* only, whether in the trial or appellate courts." (*John*, *supra*, 63 Cal.4th at p. 98.) They do not apply "to parties who did not initiate the action in the trial court." (*Id*. at p. 99.)

The criminal contempt action was initiated by DCSS, not husband. Husband cannot be deemed to be the plaintiff in that action. Husband's requests for orders can reasonably be construed as an effort to defend against the criminal contempt action. "[Code Civ. Proc.] section 391.7's prefiling requirements do not apply to a self-represented litigant previously declared a vexatious litigant seeking to appeal an adverse judgment or interlocutory order in an action where he or she was the defendant." (*John*, *supra*, 63 Cal.4th at p. 93)

In a letter to husband dated February 8, 2023, wife's counsel claimed the action in question was initiated by DCSS. In opposing husband's request to depose wife, counsel wrote: "[Wife] is not the subject of or involved in any of the pending litigation—the pending issue is a contempt action for your failure to pay child support which was filed by the Department of Child

7

Support Services (DCSS); [wife] has no involvement in that action; therefore she cannot be subjected to a deposition."

Accordingly, the prefiling order did not require husband to obtain the presiding justice's permission to file the present appeal. Wife's motion to dismiss the appeal is denied.

<em>Trial Court's Alleged Failure to<br>Require Wife to Disclose Her Notes</em>

Wife testified via Zoom. When she began her testimony, she possessed nine pages of "notes." Husband's counsel requested a copy of the notes. Wife's counsel objected that disclosure of the notes would violate the attorney-client privilege because wife had shared the notes with her attorney.

The trial court denied husband's request for a copy of the notes. It rejected his claim that wife had "waived any attorney-client privilege." The court directed wife "to set aside her notes" and answer all questions "from memory unless you tell us that, 'I need to look at my notes in order to answer that question.'" Wife replied, "Okay. I don't need to look at my notes."

Husband contends that, in not requiring wife to turn over her notes, the trial court "disobeyed" Evidence Code section 771. It provides, "[I]f a witness, either while testifying or prior thereto, uses a writing to refresh his memory with respect to any matter about which he testifies, such writing must be produced at the hearing at the request of an adverse party and, unless the writing is so produced, the testimony of the witness concerning such matter shall be stricken."

Husband has failed to carry his burden of affirmatively showing error. (*In re S.C.* (2006) 138 Cal.App.4th 396, 408 ["The . . . court's judgment is presumed to be correct, and it is husband's burden to affirmatively show error. [Citation.] To

8

demonstrate error, husband must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error"].) Evidence Code section 771 provides that a writing must be produced if a witness "uses [the] writing to refresh his memory with respect to any matter about which he testifies." Husband has not cited any evidence showing that wife used the notes to refresh her memory. In its statement of decision the court found, "No actual use of the notes occurred during [husband's counsel's] examination [of wife]; nor was there evidence that any writing had been used to refresh the witness's memory."

Furthermore, husband has failed to show that the notes were not protected from disclosure by the attorney-client privilege. (See Evid. Code, § 954; *Sullivan v. Superior Court* (1972) 29 Cal.App.3d 64, 72 ["There is an apparent conflict between Evidence Code section 771 and other statutes dealing with the attorney-client privilege"].)

*Trial Court's Alleged Failure to Order Wife to*
*Appear for Deposition and Produce Documents*

On February 3, 2023, husband served on wife a notice "to Appear for her videotaped deposition, via online and to Identify & Produce [specified documents] at the taking of her deposition," which was scheduled for February 13, 2023.

On February 16, 2023, husband moved for "Terminating Sanctions" "on the grounds that [wife] and her Attorney . . . have failed to appear for the scheduled 02/13/23 deposition and failed to produce [wife's] Concealed German, Russian Bank Account Statements, Concealed Russian Apartment ownership Documents, and related financial Documents." Husband also

9

moved for an order compelling wife to produce the specified documents.

At a June 5, 2023 hearing, the trial court denied husband's motion. The court reasoned: The notice of deposition "would have required [wife] . . . to travel more than [] 150 miles if she chose to attend in person. [¶] And there are some difficulties with compelling people to appear by Zoom for depositions because it limits their ability to confer with counsel . . . . [¶] . . . [¶] You [husband], actually, set it on a court holiday, and when [wife's counsel] . . . responded with a date to meet and confer, you didn't get back to her. [¶] And when she tried to call you at that process [*sic*], she was unable to reach you, so that there was really no opportunity to work out the deposition on that date. [¶] So, I'm not ruling out . . . at this moment the possibility that a deposition of [wife] might be appropriate. But I do think that this attempt on the shortest possible notice . . . without a meaningful meet and confer, without any advance notice . . . makes it inappropriate to compel that particular deposition to go forward. [¶] So, I think it will take some closer analysis of the concern you have raised about concealed assets to determine whether or not there is a basis for a deposition or not."

Husband responded: "Okay. I agree, your honor. Okay. I agree with where you're going with this. I agree with that. But once we get to the point . . . [where] I can show you that she has got concealed assets, she is going to have to be examined some time." The court replied, "That may be, and we have had some discussion about that already."

By expressly agreeing that the trial court's ruling was appropriate, husband forfeited his claim that it had erroneously denied his motion. (*In re N.S.* (2020) 55 Cal.App.5th 816, 840 ["It

is settled that an appellant waives or forfeits the right to challenge a ruling on appeal by agreeing with or acquiescing to the ruling at trial"].)

Furthermore, husband has not shown that, in denying his motion, the trial court exceeded the bounds of reason. "In general, we review the trial court's ruling on a motion to compel discovery for an abuse of discretion, because the trial court is vested with wide statutory discretion to manage discovery." (*Pomona Valley Hospital Medical Center v. Superior Court* (2012) 209 Cal.App.4th 687, 692.) " 'Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered. The burden is on the party complaining to establish an abuse of discretion . . . .' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.)

Finally, husband has not shown that it is reasonably probable the result would have been more favorable to him had he been permitted to depose wife. "[T]he so-called *Watson* standard [*People v. Watson* (1956) 46 Cal.2d 818] applies generally to all manner of trial errors occurring under California law, precluding reversal unless the error resulted in a miscarriage of justice." (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 801 (*Cassim*).) " '[A] "miscarriage of justice" should be declared only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " (*Id.* at p. 800.)

11

*Trial Court's Alleged Failure to*
*Require Wife to Attend the Trial in Person*

During the evidentiary hearing, the court permitted wife to testify remotely via Zoom from her home state, Idaho. Husband's counsel objected, "[A] case like this requires the witness to be in court." On appeal husband claims, "The Trial Court was disobedient to [Code of Civil Procedure] § 1987 by failing to ensure that [wife] appear physically at trial." The claim "is . . . forfeited because it is not supported by meaningful analysis with citation to authority." (*Blizzard Energy, Inc. v. Schaefers* (2021) 71 Cal.App.5th 832, 854.)

*Claim that Trial Court Failed (1) to Timely Rule on Husband's*
*Requests for Judicial Notice and (2) to Rule on All of His RFOs*

In an 18-page order filed on August 19, 2024, the trial ruled on each of husband's 28 requests for judicial notice. Husband claims, "By failing to hear and rule on [them] 'at the earliest practicable time', the trial Court was disobedient to the Evid. Code § 456: 'If the trial court denies a request to take judicial notice of any matter, the court shall at the earliest practicable time so advise the parties and indicate for the record that it has denied the request'."

Husband has not shown that the trial court violated Evidence Code section 456. Even if it had violated the section, husband has not shown that it is reasonably probable a result more favorable to him would have been reached had the court not violated section 456. (*Cassim, supra*, 33 Cal.4th p. 801.)

Husband contends without further discussion: "[T]he trial court broke its Agreement with [him] to hear and rule on all of his pre-trial Motions, RFO'S, along with RJNs #1-28, which contained his essential evidence in support thereof." The

contention is forfeited because it is not supported by meaningful analysis with citations to the record. (*In re S.C., supra,* 138 Cal.App.4th at p. 408.)

*Claim that Trial Court Erroneously Failed to*
*Set Aside the Marital Dissolution Judgment*

Husband claims the trial court erred "when it failed to set aside the Marital Judgment when [wife] failed to disclose her concealed assets . . . and her concealed financial transactions." But the trial court found that wife had not concealed any of her assets. Indeed, the court concluded that husband had "presented no evidence of omitted or concealed assets." The court stated: "A continuing theme in the case is that it was [husband's] responsibility to identify assets that he believes were concealed from him in the divorce. He has at all times failed to do so."

The trial court credited wife's testimony and discredited husband's testimony. The court stated: "[Husband] exhibited evasion of direct answers on cross-examination, often attempted to divert discussion to topics more comfortable to his position and was content to assert any suspicion he entertained as a fact. [Wife] on the other hand made direct and informed responses to virtually every question asked of her." The court said it "found the testimony of [wife] to be entirely credible, and largely unrefuted."

Husband in effect is arguing that the evidence is insufficient to support the trial court's finding that wife did not conceal her assets or financial transactions. "When an appellant contends there is insufficient evidence to support a finding of fact, we apply the substantial evidence standard of review. [Citation.] Under that standard of review, 'the power of an appellate court begins and ends with the determination as to whether there is

13

any substantial evidence, contradicted or uncontradicted, which will support the finding of fact.' [Citation.] In so doing, we accept all evidence that supports the judgment, disregard contrary evidence, and draw all reasonable inferences to uphold the judgment. [Citation.] 'It is not our role to reweigh the evidence, redetermine the credibility of the witnesses, or resolve conflicts in the testimony, and we will not disturb the judgment if there is evidence to support it.' " (*Slone v. El Centro Regional Medical Center* (2024) 106 Cal.App.5th 1160, 1173 (*Slone*).)

"In every appeal, the appellant has the duty to fairly summarize all of the facts in the light most favorable to the judgment. [Citations.] 'Further, the burden to provide a fair summary of the evidence "grows with the complexity of the record. [Citation.]"' [Citations.] To meet its burden on appeal to show a finding of fact is not supported by substantial evidence, appellants cannot recite only evidence in their favor, but must ' "set forth in their brief *all* the material evidence on the point and *not merely their own evidence.* Unless this is done the error is deemed to be waived." . . .' " (*Slone, supra,* 106 Cal.App.5th at p. 1173.)

The record here is complex. Husband has not fairly summarized all of the facts in the light most favorable to the judgment. He recites only evidence in his favor. Accordingly, husband has waived the substantial evidence issue.

"Assuming arguendo [husband] has not . . . forfeited his substantial evidence contentions based on his improper statement of facts as concluded above, we nevertheless conclude he has failed to carry his burden on appeal to show the evidence, including all reasonable inferences therefrom[] favorable to the

14

trial court's findings and judgment[,] is insubstantial." (*Slone, supra*, 106 Cal.App.5th at p. 1175.)

*Claim that Trial Court Erred in Failing to Allow*

*Four Witnesses to Testify at Evidentiary Hearing*

Husband contends, "The trial Court did not allow any of [husband's] three expert witnesses, who were former federal agents, to testify, and would not allow one of the primary witnesses Morris Hodges (Hodges) to testify." As to two of the experts – Stanley Los, Jr., and John Sampson – husband does not support his contention by references to the record. The contention is therefore waived. "Every brief must support any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears. (Cal. Rules of Court, rule 8.204(a)(1)(C).) The appellate court is not required to search the record on its own seeking error. If a party fails to support an argument with the necessary citations to the record, the argument will be deemed waived." (*LA Investments, LLC v. Spix* (2022) 75 Cal.App.5th 1044, 1061.)

As to the third expert – Larry Stewart – the trial court said it would take judicial notice of his declaration and would read it "with care and understanding," which is "what we would get if we called him to testify." Based on Stewart's declaration, "we have what his testimony would be." The court noted that this procedure would save husband money because he would not have to call Stewart "to the stand, and it [the declaration] is evidence before the court." Husband acquiesced in this procedure: "Okay, your honor. With that in mind – so we're finished with that, then." By his acquiescence, husband waived the issue. (*In re N.S., supra,* 55 Cal.App.5th at p. 840.) In any event, husband has not explained how the trial court's ruling resulted in a

15

miscarriage of justice.  (*Cassim*, *supra*, 33 Cal.4th at pp. 800-801.)

As to Morris Hodges, the trial court's statement of decision shows why it excluded his testimony.  The court said: "[Husband] wished to call a next-door neighbor, Morris Hodges, who had been deposed in December 2016, whose testimony, he believed, would refute claims that [wife] had made in 2014-2016 that [husband] had been abusive.  The offer was made during the evidentiary hearing on omitted assets — about which Mr. Hodges was necessarily ignorant.  [Husband] again asked the court to reconsider decisions on [wife's] credibility made by prior judges and to infer from the claimed fact that she testified falsely or inaccurately in the prior proceedings that she should not be believed when now denying that she omitted or concealed community assets in her possession.  The court excluded the testimony as unduly time-consuming and unpersuasive.  It remained [husband's] burden to show the existence of omitted assets.  This was not the way to accomplish the goal."

The trial court did not err in excluding Hodges's testimony.  Evidence Code section 352 provides, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  Wife's allegedly false claim in 2014-2016 that husband was abusive had little relevance as to whether wife was telling the truth in 2023 when she testified that she had no concealed assets.  The trial court reasonably concluded that the probative value of Hodges's testimony would be substantially outweighed by the probability that its admission would be unduly

16

time consuming because it would require a mini trial concerning the parties' relationship in 2014-2016.

*Wife's Request for Sanctions for Taking a Frivolous Appeal*

Wife has moved for an award of sanctions against husband for taking a frivolous appeal. She requests attorney fees of $11,840 (29.6 hours at $400 per hour) and costs of $750.20, for a total of $12,590.20. We conclude the requested fees and costs are reasonable.

"We have discretion to impose sanctions where the appeal is frivolous. ' "An appeal is frivolous 'only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit. . . .' . . ." ' " (*Champlin/GEI Wind Holdings, LLC v. Avery* (2023) 92 Cal.App.5th 218, 227.) "Sanctions for taking a frivolous appeal 'should be used most sparingly to deter only the most egregious conduct.' " (*Clarity Co. Consulting, LLC v. Gabriel* (2022) 77 Cal.App.5th 454, 466 (*Clarity*).)

"When[, as here,] an appellant decides to represent himself in propria persona, 'he is entitled to the same, but no greater, consideration than other litigants and attorneys. [Citations.]' [Citation.] . . . A pro. per. litigant is held to the same restrictive procedural rules as an attorney." (*Bistawros v. Greenberg* (1987) 189 Cal.App.3d 189, 193.)

Any reasonable attorney would agree that husband's appeal is totally and completely without merit. Furthermore, husband's conduct in pursuing the appeal is particularly egregious in view of the trial court's warning when it decided to impose sanctions against him. The court told husband: "[T]his

17

seems to be an unending vendetta.  [¶] . . . I have preached the sermon that this should have been something that you let go of, but it doesn't seem possible for you to do that.  [¶]  [¶]  This is . . . a wrongly thought of, misguided, factually-unsupported claim that should not be further pursued, and I don't know how to make that point forcefully . . . without issuing sanctions."

The trial court continued: "[I]f every litigant who lost, even in just divorce actions, would take the position you do that we have to have many more years of litigation, . . . the justice system would just collapse.  [¶]  It was . . . all we can do, through the many judges that have heard these cases, to keep up with your constant flow of new filings, and requests for judicial notice, and actions for sanctions, and an annulment action after a final divorce[4] . . . .  There is just no end . . . to your creativity here, and . . . it needs to stop."  "[T]he danger is that you're incapable of reassessing whether you're . . . correct no matter what the court says, and that you're determined to let your view of justice prevail.  But that can't be the case at this point."

In view of the trial court's warning to husband, it is reasonable to infer that the appeal was taken for the purpose of harassing wife.  Husband told the court: "[A]ppeals, you know, are very unlikely.  You know that.  It is very unlikely to prevail on appeals . . . ."

In deciding to impose sanctions for taking a frivolous appeal, we have considered husband's apparent ability to pay the sanctions.  The trial court said: "There is property to pay; most

---

[4] In *In re Marriage of Walther, supra,* B309062, slip opn. at pp. 1-2, we affirmed the trial court's order dismissing husband's petition "to nullify his dissolved marriage on the ground that [wife] had committed fraud and bigamy."

18

notably, the home in Santa Barbara.  It is valuable.  There are other properties."  Wife's counsel asserted: "[Husband] completely fails to make any reference to his inheritance.  And it is my understanding that he has inherited something above $7,000,000.00.  [¶]  He doesn't reference it. . . .  He has inherited funds from his late mother, and property, and it is extensive."  Husband did not dispute wife's counsel's statement.

We have also taken into consideration that husband is experienced in appellate litigation.  This is his fourth appeal in this matter.  In his third appeal, where he also appeared in propria persona, he was clearly put on notice that he has the burden of establishing that an error was prejudicial: "Without a showing of prejudice, any error was harmless and therefore cannot justify a reversal of the judgment."  (*In re Marriage of Walther, supra,* B309062, slip opn. at p. 7.)

"This court has wasted its time and resources considering [husband's] appeal, which has only served as a drain on the judicial system and the taxpayers of this state."  (*Malek Media Group, LLC v. AXQG Corp.* (2020) 58 Cal.App.5th 817, 837.)  " ' "Courts, with increasing frequency, have imposed additional sanctions, payable to the clerk of the court, to compensate the state for the cost to the taxpayers of processing a frivolous appeal.  [Citation.]  The cost of processing an appeal that results in an opinion has been estimated to be approximately $ 8,500."  [Citations.]  We find that additional sanctions in the amount of $8,500.00 are appropriate.' "  (*Clarity, supra,* 77 Cal.App.5th at p. 467.)

This opinion constitutes a written statement of our reasons for imposing sanctions.

*Disposition*

The purported appeal from the trial court's order imposing sanctions of $72,476.87 is dismissed. The trial court's order filed on August 19, 2024, is affirmed. Wife's motion for sanctions on appeal is granted. For taking a frivolous appeal, sanctions are imposed on husband in the amount of $12,590.20 to be paid to wife, and $8,500 to be paid to the clerk of this court. All sanctions shall be paid no later than 30 days after the date the remittitur is issued. Wife shall recover from husband any costs on appeal not included in the sanctions order. (Cal. Rules of Court, rule 8.278(d).)

NOT TO BE PUBLISHED.


YEGAN, Acting P. J.


We concur:


BALTODANO, J.


CODY, J.

Jed Beebe, Judge

Superior Court County of Santa Barbara

_____

Howard Walther, in propria persona, for Appellant.

Law Offices of Stephanie J. Finelli and Stephanie J. Finelli, for Respondent.